IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
GAINESVILLE DIVISION

| | |
|---|---|
| HERBERT TOMLINSON and SANDY TOMLINSON, : : : Plaintiffs, : : v. : : RESQLINE, INC., CARL STAHL SAVA INDUSTRIES, INC. a/k/a SAVA INDUSTRIES, INC., : : : : Defendants. : | CIVIL ACTION NO. 2:04-CV-122-WCO |

## ORDER

The captioned case is before the court for consideration of defendant Carl Stahl Sava Industries, Inc.'s ("Sava") motion for summary judgment [138-1].

### I.   Factual Background and Procedural History

Plaintiffs are suing for damages arising from a near-fatal accident that occurred on November 20, 2003. Plaintiff Herbert Tomlinson was injured while attempting to use the SafirRosetti ResQline System ("System"), an evacuation system comprised of a cable and harness which are used to lower a person to the ground. (Compl. ¶ 29.) Plaintiffs brought the underlying action against defendants who they allege designed, manufactured, assembled, marketed, and sold the System. (Id. ¶ 17.)

The System was designed by Moshe Meller who incorporated ResQline, Inc. to market and sell the System. (Id. ¶ 11.)  The System is comprised of a steel frame, fan, and shaft.  (Def.'s Statement of Material Facts ¶ 5.) The shaft is coupled to the fan and holds a replaceable cable cartridge. (Id. ¶ 7.)  The cartridge consists of a rolled steel cable wound onto a spool. (Id.) The rescue harness is then connected to one end of the cable.  (Id. ¶ 8.)  Various warnings and instructions accompanied the System, including the following:

    (1)    For Indoor Installation Only.

    (2)    Max Person Capacity Per Cartridge: 1.

    (3)    WARNING! This product is part of an emergency escape system. Manufacturer's instructions must be followed for proper use and maintenance of this equipment.  Alterations or misuse of this equipment, or failure to follow instructions, may result in serious injury or death.

    (4)    IMPORTANT: The ResQline Emergency Escape System must not be used for fall protection.  This equipment is designed for EMERGENCY descent use only when all other routes of egress are blocked and not usable.

    (5)    IMPORTANT: . . . The ResQline Emergency Escape System is designed for EMERGENCY descent use only.

    (6)    NUMBER OF USERS: . . . The number of descents that can be performed limited only by the number of Cable Cartridges.

    (7)    One cable cartridge and one body harness are required for each evacuee.

>   (8)   OPERATION: . . . If system is to be used for multiple descents, next person shall perform the following procedure . . . Step 2 Remove used cartridge from axle and place on cable rack. (See Figure 10).

(Id. ¶ 12.)

Sava, a manufacturer of cables, fittings, assemblies, and pulleys, was contacted by ResQline to supply the cable for the System. (Id. ¶¶ 13-14.) ResQline requested a cable with a minimum breaking strength of 1300 pounds and stated that this specification was approved by Underwriters Laboratory. (Id. ¶¶ 15-16.) After inspecting various cables, Moshe Meller decided to use a 7/64ths cable for the System. (Id. ¶ 18.) As Sava did not manufacture this particular size cable, Sava contacted Indusco, Inc., a manufacturer of wire rope. (Id. ¶¶ 19-20.) Indusco purchased the cable from another company, then Sava purchased the cable from Indusco. (Id. ¶¶ 21-22.) Sava tested the cable to ensure that it met ResQline's specifications, cut it to the lengths specified by ResQline, created a loop at one end to attach to the harness, and manufactured a plug for the other end of the cable. (Id. ¶ 22.) Sava then spooled the cable assembly onto a temporary plastic spool and sent it to ResQline for final re-spooling. (Id. ¶ 23.)

Plaintiff Herbert Tomlinson and his partner, Peter Knowles, contacted ResQline to become distributors of the System. (Id. ¶¶ 25-26.) To test the

System, plaintiff and Knowles constructed a forty-foot tower and purchased three of the Systems and six 300-foot cable assemblies. (Id. ¶¶ 31-32.) Plaintiff unspooled one of the cables, cut it to sixty feet from the loop sleeve end, removed the plug, attached a clamp to the end, and laced the cable back into the spool. (Id. ¶¶ 33-34.) Plaintiff and Knowles used this shortened cable assembly for the tests of the System. (Id. ¶ 36.)

In the first test, plaintiff and Knowles attached two five-gallon buckets of sheet rock mud to the loop sleeve of the cable. (Id. ¶ 37.) In the next four tests, they used two eighty-pound burlap bags of dry concrete. (Id. ¶¶ 39, 42.) Plaintiff's son then tested the System four times. (Id. ¶ 44.) In each of these nine tests, the System worked. (Id. ¶ 45.) After each test, plaintiff rewound the cable by hand from atop the tower. (Id.) Plaintiff then decided to test the System himself using the same cable as in the previous nine tests. (Id. ¶¶ 47-48.) Plaintiff slid off the tower, and the cable broke approximately five feet from the harness, causing plaintiff to fall. (Id. ¶ 49.) As a result of the fall, plaintiff suffered extensive injuries. (See Compl. ¶ 29.)

Plaintiffs assert claims of strict products liability, negligence, breach of failure to warn, implied warranties, loss of consortium, and punitive damages. Plaintiffs' theory of recovery against Sava is that Sava manufactured a

component part of the System that failed and caused Herbert Tomlinson's injuries. Defendant Sava now moves for summary judgment on the counts of strict liability, negligence, failure to warn, and breach of implied warranties. Defendant also raises the doctrine of assumption of risk as a defense.

**II.     Summary Judgment Standard**

Summary judgment shall be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Only those claims for which there is no need for a factual determination and for which there is a clear legal basis are properly disposed of through summary judgment. See Celotex Corp. v. Catrett, 477 U.S. 317 (1986).

It is well-settled that a court evaluating a summary judgment motion must view the evidence in the light most favorable to the non-movant. See, e.g., Samples v. City of Atlanta, 846 F.2d 1328, 1330 (11th Cir. 1988). It is important to recognize, however, that this principle does not require the parties to concur on every factual point. Rule 56 "[b]y its very terms . . . provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement

is that there be no genuine issue of material fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Consideration of a summary judgment motion does not lessen the burden on the nonmoving party. The nonmoving party still bears the burden of coming forth with sufficient evidence. See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1080 (11th Cir. 1990). However, it is important to note the difference "between direct evidence and inferences that may permissibly be drawn from that evidence. Where a nonmovant presents direct evidence that creates a genuine issue of material fact, the only issue is one of credibility; thus, there is no legal issue for the court to decide." Mize v. Jefferson City Bd. of Educ., 93 F.3d 739, 742 (11th Cir. 1996). On the other hand, "[a] court need not permit a case to go to a jury . . . when the inferences that are drawn from the evidence, and upon which the nonmovant relies, are 'implausible.'" Id. at 743. Adopting language from one of its sister circuits, the Eleventh Circuit stated:

> If the nonmoving party produces direct evidence of a material fact, the court may not assess the credibility of this evidence nor weigh against it any conflicting evidence presented by the moving party. The nonmoving party's evidence must be taken as true. Inferences from the nonmoving party's "specific facts" as to other material facts, however, may be drawn only if they are reasonable in view of other undisputed background or contextual facts and only if such inferences are otherwise permissible under the governing substantive law. This inquiry ensures that a "genuine" issue of material fact exists for the factfinder to resolve at trial.

Id. (citation omitted). "Where the evidence is circumstantial, a court may grant summary judgment when it concludes that no reasonable jury may infer from the assumed facts the conclusion upon which the nonmovant's claim rests." Id.

### III. Preliminary Matters

In the instant case, subject-matter jurisdiction over defendant is premised on diversity of citizenship between the parties under 28 U.S.C. § 1332. Pursuant to Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938), "a federal court in a diversity action must apply the controlling substantive law of the state." Cambridge Mut. Ins. Co. v. City of Claxton, 720 F.2d 1230, 1232 (11th Cir. 1983). Georgia law thus governs the resolution of the claim at issue in this action. See Mullins v. M.G.D. Graphics Sys. Group, 867 F. Supp. 1578, 1580 (N.D. Ga. 1994) ("[u]nder Georgia's choice of law rules, the substantive law to be applied in a tort case is governed by the doctrine of lex loci delicti, the law of the place of the wrong").

### III. Analysis

#### A. Strict Liability

Plaintiffs seek recovery from Sava under a theory of strict liability. Defendant argues that it is entitled to summary judgment. Under Georgia law, the manufacturer of personal property sold as new is strictly liable to an individual who is injured by that property. O.C.G.A. § 51-1-11(b). To establish

defendant's strict liability, plaintiffs must prove that defendant is the manufacturer of the component part, that the part when sold by the manufacturer was not merchantable and reasonably suited to the intended use, and that its condition when sold was the proximate cause of the injury sustained. Chicago Hardware & Fixture Co. v. Letterman, 510 S.E.2d 875, 877-78 (Ga. Ct. App. 1999).

There are three basic scenarios under which an entity is deemed to be a manufacturer under Georgia law: (1) where the entity is the actual manufacturer or designer of the product; (2) where the entity is a manufacturer of a component part which failed and caused injury to the plaintiff; and (3) where the entity is an assembler of component parts who then sells the item as a single product under its own trade name. O.C.G.A. § 51-1-11(b). Georgia courts, however, do not accept an expansive reading of the term "manufacturer"; O.C.G.A. § 51-1-11 is to be strictly construed. Morgan v. Mar-Bel, Inc., 614 F. Supp. 438, 441 (N.D. Ga. 1985). Under Georgia law, strict liability applies only to "actual manufacturers – those entities that have an active role in the production, design, or assembly of products and placing them in the stream of commerce." Freeman v. United Cities Propane Gas of Ga., Inc., 807 F. Supp. 1533, 1540 (M.D. Ga. 1992). Hence, a "product seller," as defined in O.C.G.A. §

51-1-11.1(a) as a person who "leases or sells and distributes; installs; blends; packages; labels; markets; or assembles pursuant to a manufacturer's plan, intention, design, specifications, or formulation," is not a manufacturer. O.C.G.A. § 51-1-11.1(b).

Plaintiffs have not alleged that Sava manufactured or designed the System itself, nor have they alleged that Sava sold the System under its own trade name. Rather, plaintiffs allege that defendant manufactured component parts that failed and caused injury to Herbert Tomlinson. Therefore, the only definition of "manufacturer" that may apply to Sava is that under O.C.G.A. § 51-1-11(b)(2). Defendant, however, claims that it is not a manufacturer under this definition.

Plaintiffs have alleged that Sava manufactured the cable and cable assembly, which consisted of the cable with a loop sleeve at one end to attach to the harness and a cable plug at the other end. (Pls.' Statement of Contested Material Facts ¶ 1.) Plaintiffs argue that Sava's role in the placement of the selected cable into the System made Sava the manufacturer of the cable assembly. Plaintiffs, however, have described Sava's role too broadly. It is clear to the court that Sava did not manufacture the cable itself as Sava purchased it from Indusco, who in turn purchased it from another unknown company. (Def.'s Statement of Material Facts. ¶¶ 21-22.) Furthermore, there is no evidence

9

that Sava participated in the integration of the cable assembly into the System. Rather, Sava purchased a cable selected by ResQline, attached a loop sleeve to one end and a plug to the other end.[1]  Plaintiffs have presented no evidence that Sava played an active role in the selection of the particular cable used in the System.  Rather, ResQline told Sava the specifications for the cable, and Sava then presented ResQline with various options. Moshe Meller ultimately selected the particular cable that was used in the System.  There is also no evidence that Sava participated in the design of the System.  Sava's role with respect to the cable assembly was that of a product seller under Georgia law in that Sava "assemble[d] pursuant to a manufacturer's plan, intention, design, specifications, or formulation." O.C.G.A. § 51-1-11.1(a); see also Buchan v. Lawrence Metal Prods., 607 S.E.2d 153, 156-157 (Ga. Ct. App. 2004) (distinguishing manufacturer from product seller).  Even when the evidence is viewed in the light most favorable to plaintiffs, the court concludes that Sava was merely the manufacturer of the loop and the plug on either end of the cable and not of the entire cable assembly.

Under O.C.G.A. § 51-1-11, proximate cause is a necessary element to a plaintiff's case. See Chicago Hardware & Fixture Co., 510 S.E.2d at 877-878.  The

---

[1] Although Sava rolled the cable onto a plastic spool, ResQline later re-spooled the cable.

proximate cause of the plaintiff's injury must be a defective condition that existed when the product was sold. Talley v. City Tank Corp., 279 S.E.2d 264, 269 (Ga. Ct. App. 1981). This defective condition must be the result of the defendant's manufacture or design. Id. On the issue of proximate cause, plaintiffs have alleged that the failure of the cable and cable assembly led to Herbert Tomlinson's injuries. Again, plaintiffs have stated their case too broadly. The cable broke five feet from the end that was attached by the loop to the harness. Although the parties dispute the actual cause of the cable's failure, there is no evidence to suggest that it was caused by a defect in the loop sleeve or the plug or in their attachment to the cable. Plaintiffs' allegations with regard to the cause of the injuries relate to strength of the cable or the manner in which the cable unrolled from the spool. Sava did not manufacture the cable itself, nor did it spool the cable in the finished product. Therefore, there is no genuine issue of material fact with regard to whether Sava was the manufacturer of a component part the failure of which caused injury to plaintiff under Georgia law.

The court finds that it would be unreasonable to find that Sava was the manufacturer of the entire cable assembly such that strict liability could be attributed for the failure of a cable that Sava neither manufactured nor selected.

Sava's role with regard to the cable itself was that of a product seller as Sava merely used the cable as a component of the cable assembly. There is no evidence or even any allegation that the loop sleeve or the plug malfunctioned or were in a defective condition. The cable broke approximately five feet from the loop sleeve end. Sava was clearly not the manufacturer of the cable itself, and there is no evidence that Sava had an active role in the design or selection of the cable. Therefore, the court finds that Sava was not the manufacturer of a defective component part the failure of which caused plaintiff's injury. Accordingly, defendant's motion for summary judgment is **GRANTED** with regard to plaintiffs' claim for strict liability (Count III).

### B. Negligence

Plaintiffs also seek recovery under a theory of negligence. In a products liability case alleging negligence, a plaintiff must show that the manufacturer of the component failed to use reasonable care in designing it so that it would be reasonably safe for the intended purpose and for other reasonably foreseeable uses. Hall v. Scott USA, Ltd., 400 S.E.2d 700, 704 (Ga. Ct. App. 1990). Plaintiffs have alleged that Sava was negligent in manufacturing the cable assembly for the System because it failed to use reasonable care in designing the component to ensure that it would be safe for its intended purpose.

The court has already determined that Sava was not the manufacturer of a component part that failed. As discussed above, Sava was not the manufacturer of the cable itself or of the entire cable assembly. Rather, Sava was the manufacturer of the loop sleeve and the plug that were located at either end of the cable. There is no allegation that either of these components failed. Thus, there is no genuine issue of material fact as to whether Sava breached a duty of care in designing or manufacturing a component part the failure of which caused plaintiff's injury. Accordingly, defendant's motion is **GRANTED** with regard to plaintiffs' claim for negligence (Count IX).

### C.     Failure to Warn

Plaintiffs claim that Sava is liable for its failure to warn the consumer of the danger that might result from the use of the cable assembly in the System. Under Georgia law, a component manufacturer has a duty to warn of a danger that may result from a reasonably foreseeable use of its product. Beauchamp v. Russell, 547 F. Supp. 1191, 1197 (N.D. Ga. 1982). However, as the court has previously stated, Sava was not the manufacturer of the cable itself, the component part the failure of which caused plaintiff's injuries. Therefore, the question the court must address is whether Sava had a duty to warn consumers of the danger of a component part that Sava assembled according to the

manufacturer's specifications and then sold to the manufacturer for integration into the completed product.

The court finds that no such duty to warn exists. It would be unreasonable and impractical to impose such a burden on Sava based on the facts of the case. Both parties agree that the particular type of danger involved in this case was that each cable assembly should be used only once. However, the reason such danger existed was either related to the allegedly insufficient strength of the cable used in the System or the precision involved in the respooling of the cable after each use. Sava neither manufactured the cable itself nor actively participated in its design or selection. Furthermore, although Sava presented the cable assembly to ResQline on temporary plastic spools, ResQline respooled the cable for use in the final product as sold to consumers. Therefore, the court finds that Sava did not have a duty to warn the ultimate consumer of this particular danger. Thus, defendant's motion for summary judgment is **GRANTED** with regard to plaintiffs' claim for failure to warn (Count XIX).

### D.    Breach of Implied Warranties

Plaintiffs allege that defendant is liable for breach of implied warranties. Plaintiffs allege that defendant knew that the cable would be subjected to forces during use and that defendant impliedly warranted that the System would be

suitable for its intended purpose. Defendant argues that it is entitled to summary judgment on this claim as it was not in privity with plaintiffs.

Under O.C.G.A. § 11-2-314, a warranty that goods are merchantable is implied in a contract for their sale. O.C.G.A. § 11-2-315 provides for an implied warranty of fitness for a particular purpose when the seller has reason to know of any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to provide suitable goods. However, to recover for breach of implied warranty, a plaintiff must show privity between himself and the defendant. See Bodymasters Sports Indus., Inc. v. Wimberley, 501 S.E.2d 556, 561 (Ga. Ct. App. 1998); Lamb v. Georgia-Pacific Corp., 392 S.E.2d 307, 309 (Ga. Ct. App. 1990). Therefore, if the defendant was not the seller to the plaintiff-purchaser, the plaintiff as the ultimate purchaser cannot recover on any implied warranty arising out of the prior sale by the defendant to the original purchaser, such as the distributor or retailer from whom plaintiff purchased the product. Thomaston v. Ft. Wayne Pools, Inc., 352 S.E.2d 794, 796 (Ga. Ct. App. 1987). A seller's warranty extends only to people who are members of the family or household of the buyer or who are guests in the buyer's home who would reasonably be expected to use the product. O.C.G.A.

15

§ 11-2-318. This does not eliminate the requirement that the buyer and defendant be in privity. Thomaston, 352 S.E.2d at 796.

Plaintiffs have alleged that Sava manufactured the cable assembly that was ultimately used in the System. Plaintiffs, however, purchased the System from ResQline, not from Sava. There was no privity between plaintiffs and Sava. Therefore, plaintiffs' claim against Sava for breach of implied warranties fails as a matter of law. See Best Canvas Prods. & Supplies, Inc. v. Ploof Truck Lines, Inc., 713 F.2d 618, 620 (11th Cir. 1983) (Georgia law barred claim for breach of implied warranty because there was no privity between manufacturer of fabric used in production of truck tarpaulins and purchaser of tarpaulins). Accordingly, defendant's motion for summary judgment is **GRANTED** with regard to plaintiffs' claim for breach of implied warranties (Count XV).

### E. Assumption of Risk

Defendant claims that it is entitled to summary judgment as plaintiff Herbert Tomlinson assumed the risk of his own injuries. The doctrine of assumption of risk acts as a complete defense and arises when a plaintiff is negligent in such a way that, even if defendant is negligent, the plaintiff's own negligence is the sole proximate cause of his injury. Sayed v. Azizullah, 519 S.E.2d 732, 734 (Ga. Ct. App. 1999). As the court has determined that plaintiffs

have created no genuine issue of material fact with regard to the various claims against Sava, the court sees no need to determine whether defendant has established the defense of assumption of risk.

**IV.	Conclusion**

Based on the foregoing, defendant Sava's motion for summary judgment [138-1] is hereby **GRANTED** as to Counts III, IX, XV, and XIX.

IT IS SO ORDERED, this 24th day of April, 2006.

s/ *William C. O'Kelley*
WILLIAM C. O'KELLEY
Senior United States District Judge
